UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO.: 1:16-CR-57-HAB |
| | ) | |
| MARIANNE MATCHETTE | ) | |

**OPINION AND ORDER**

Marianne Matchette ("the Defendant") filed a motion seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A) (ECF No. 83).[1] The Government responded on February 1, 2021. The time for Defendant to reply has passed, making her motion ripe for consideration. For the following reasons, the Defendant's motion will be DENIED.

**PROCEDURAL BACKGROUND**

Defendant was charged in a 15 count indictment alleging violations of access device fraud (18 U.S.C. §1029), aggravated identity theft (18 U.S.C. §1028), wire fraud (18 U.S.C. § 1343), and mail fraud (18 U.S.C. §1841). Paragraphs 13 through 56 of the presentence investigation report (PSR) set forth the relevant facts of Defendant's offense conduct. Suffice it to say, the Defendant utilized business credit cards, a credit card from her employer issued in her name, and the personal credit cards of her boss to make unauthorized purchases for her benefit and that of her family in an amount exceeding $100,000. Defendant pled guilty to two counts of the indictment and, on March 25, 2019, she was sentenced to 27 months imprisonment on Count 7 and a consecutive 24

---

[1] Pursuant to this Court's General Order 2020-11, the Court referred the Defendant's motion to the Northern District of Indiana Federal Community Defenders, Inc. ("FCD") for it to consider representing the defendant with respect to his motion. (ECF No. 84). Subsequently, the FCD filed a Notice indicating that it would not be appearing on the Defendant's behalf. (ECF No. 85).

motnhs imprisonment on Count 9. (ECF No. 75). She was ordered to repay restitution in the total sum of over $120,000.00 to multiple victims of her offense. She is currently incarcerated at Lexington FMC, in Lexington, Kentucky with an anticipated release date of January 4, 2023.

## **DISCUSSION**

The Defendant's Motion requests compassionate release. Generally, a court is statutorily prohibited from modifying a term of imprisonment once imposed. *See* 18 U.S.C. § 3582(c). A handful of statutory exceptions exist, however, one of which allows a court to grant an inmate compassionate release if the inmate meets certain requirements. *See* 18 U.S.C. § 3582(c)(1)(A). Under this provision, as amended by § 603(b) the First Step Act, a court may not modify a term of imprisonment except that –

(1) in any case --

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, . . . finds that—

(i) extraordinary and compelling reasons warrant such a reduction …

… and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i).

The Government concedes that the Defendant has exhausted her administrative remedies and that her motion is properly before the Court. *See United States v. Sanford,* 986 F.3d 779 (7th Cir. 2021) (exhaustion is a mandatory claim-processing rule and must be enforced prior to proceeding on the merits); *United States v. Gunn,* 980 F.3d 1178, 1181 (7th Cir. 2021) (the exhaustion requirement is an affirmative defense that is waived if the Government fails to properly

2

invoke it). Thus, the Court turns to the substance of the Defendant's request, her contention that she has demonstrated "extraordinary and compelling reasons" for her release.

The Defendant asserts that her obesity, uncontrolled hypertension, her elevated A1c level and her depression combined with her conditions of confinement at FMC Lexington constitute extraordinary and compelling circumstances justifying her release. Additionally, she asserts that the "unparalleled health crisis" in our country and its "arrival in our prisons" further validates her request for relief.

Congress did not define "extraordinary and compelling reasons" in the statute, instead delegating the matter to the Sentencing Commission to promulgate a policy statement that "describe[s] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The policy statement, contained in United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 and the accompanying Application Notes, have not been amended to reflect the First Step Act's change to § 3582(c)(1)(A) allowing prisoners to bring compassionate release claims directly before the court. *United States v. Gunn*, 980 F.3d at 1180. Accordingly, "§ 1B1.13 and its application notes provide useful – but not binding – guidance to courts in determining whether a defendant has identified an extraordinary and compelling reason for compassionate release." *United States v. Hoskins*, No. 2:99 CR 117, 2020 WL 7640408, at *2 (N.D. Ind. Dec. 23, 2020) (citing *Gunn*, 938 F.3d at 1180). Indeed, "[d]istrict judges must operate under the statutory criteria–'extraordinary and compelling reasons'–subject to deferential appellate review." *Gunn,* 980 F.3d at 1181.

Using the guidance of §1B1.13 to inform the statutory criteria, the court considers the medical condition of the defendant, her age, her family circumstances, and whether there exists in the defendant's case an extraordinary or compelling reason "other than or in combination with"

3

the other reasons described in the Application Notes.² Second, the Court determines whether the Defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, the Court considers the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. 1B1.13.

Additionally, when the Defendant moves for a reduction based on COVID-19, Courts have also considered: (1) the specificity of the defendant's COVID-19 concerns, (2) whether the defendant has a medical condition that makes him especially susceptible to the dangers of COVID-19, and (3) the extent that the defendant's release would mitigate or aggravate the COVID-19 pandemic. *See United States v. Council*, No. 1:14-CR-14-5-TLS-SLC, 2020 WL 3097461, at *5–7 (N.D. Ind. June 11, 2020); *United States v. Barrett*, No. 2:17-CR-1, 2020 WL 3264112, at *3 (N.D. Ind. June 17, 2020); *see also United States v. Davis*, No. 2:19-CR-74-3, 2020 WL 1951652, at *1–2 (N.D. Ind. Apr. 23, 2020) (applying similar factors to consider whether there was a "compelling reason" for pretrial release due to the COVID-19 pandemic). In the context of the COVID-19 pandemic, "§ 3582(c)(1)(A) contemplates a sentence reduction for specific individuals based on the individuals' particular circumstances of where he is housed and his personal health conditions." *See Council*, 2020 WL 3097461, at *5.

Ultimately, however, it is Defendant's burden to establish that a "compassionate release" is warranted under the statute. *United States v. Wesley*, 2020 WL 3868901, *1 (D. Kan. July 9, 2020); *see also United States v. Bright*, 2020 WL 473323, at *1 ("extraordinary and compelling" imposes a heavy burden on a defendant seeking relief under Section 3582(c)(1)(A)).

---

²However, as *Gunn* made clear, the policy statement's requirement that the court consider whether the reduction is otherwise "consistent with this policy statement" does not limit a district judge's discretion. This is because the statute by which the district court is bound requires a reduction to be consistent with "applicable policy statements." And, the Sentencing Commission has not yet issued a policy statement "applicable" to the Defendant's request. Thus, *Gunn* held, "[a]ny decision is 'consistent with' a nonexistent policy statement." *Gunn*, 980 F.3d at 1180.

The Defendant is housed in a Federal Medical Center as a care level 1, which is the least restrictive care level. The Defendant's medical records, submitted by the Government, confirm that the Defendant has had routinely elevated glucose and A1c levels (between 5.7 and 6.4 at various times) which place her at an increased risk for diabetes. On December 2, 2020, the Defendant had an A1c of 6.6 which is within the range for diabetes, although it does not appear that a formal diagnosis was made. However, given the consistency with which the Defendant has had elevated A1c levels and the December 2020 A1c level, the Court considers the Defendant, for purposes of her motion only, to be diabetic. Likewise, the records reflect that the Defendant, at 5'3" tall, weighs 247 pounds. This corresponds to a BMI of 43.7 and puts her in the category of serious obesity (BMI >40). As for her hypertension, the Defendant's medical records demonstrate a history of high blood pressure. Although it is regularly monitored, the Defendant has not been prescribed any medication to control her high blood pressure.[3]

The Centers for Disease Control and Prevention ("CDC") has published guidelines listing pre-existing conditions that place individuals of any age at an increased risk of severe illness from COVID-19. Of the above conditions, Defendant's severe obesity and her diabetes are recognized by the Center for Disease Control as increasing or potentially increasing the likelihood of severe illness from COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed February 25, 2021). The CDC considers the Defendant's hypertension to be a condition that might increase the risk of severe

---

[3]Defendant also reports a history of depression and anxiety. The PSR supports the conclusion that, at various times, the Defendant has had mental health encounters. In a prior federal case, the Defendant's conditions of supervised release were modified to include a condition requiring mental health aftercare. What is absent from the present medical record is any indication that her anxiety or depression has become a significant concern at FMC Lexington, or that COVID-19 has created additional mental health stress for her. The medical records do reflect the Defendant has presented occasionally with a mental health related issue.

illness from the virus causing COVID-19. Thus, the Court concludes that the Defendant has met her burden of identifying medical conditions increasing her risks of serious illness should she contract COVID-19. *See United States v. Lewis*, 2021 WL 518388, at *3 (S.D. Ind. Feb. 11, 2021) (Government conceding that Defendant's diabetes, morbid obesity, and hypertension increase risk of infection, grave illness, and death due to COVID-19).

This said, it appears that after the date she signed her motion, the Defendant was diagnosed with COVID-19. Her medical records indicate that she tested positive on January 12, 2021, was asymptomatic, and placed in quarantine. (ECF 88, Gov't Ex. 1 at 8-12). She was prescribed acetaminophen on January 13, 2021, for a headache, and had normal range of temperatures and normal oxygen saturation rates when monitored. She denied symptoms of cough, shortness of breath, fatigue, body aches, sore throat, diarrhea, loss of taste or smell, and nausea/vomiting. (*Id.* at 12). There is no indication of any serious illness from the virus and even less suggesting that her pre-existing medical conditions increased the severity of COVID-19 in her system. In determining whether to grant compassionate release to an inmate with COVID-19, district courts consider the inmate's current symptoms and need for urgent treatment as well as the inmate's chronic medical conditions. *United States v. Fraley*, No. 4:15-CR-28 TWP-VTW-10, 2020 WL 5913284, at *5 (S.D. Ind. Oct. 6, 2020). Where, as here, a defendant does not appear to have any current symptoms nor a need for urgent treatment, the Court does not have to hypothesize as to Defendant's reaction to COVID-19. Indeed, it appears the Defendant has weathered the storm of COVID without severe illness and her contention that if she contracts COVID-19 at FMC Lexington she "risks death and/or serious harm to her life and health…" is simply not borne out in the record.

Further, even if she had not been diagnosed with COVID-19, there is nothing in the medical records or in the Defendant's motion suggesting her medical conditions "substantially diminish[]

6

the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *See* U.S.S.G. 1B1.13 (requiring a defendant relying on a serious physical or medical condition to demonstrate a diminution in self-care abilities as a result of the condition). Thus, the Defendant's various medical conditions do not support her request for compassionate release.

It is also worth noting that the Defendant's own personal choices appear to be at odds with the advice of her medical providers. The Defendant has been advised that her conditions require a modified diet including limited salt intake and that she must make additional lifestyle modifications. Defendant's commissary purchases indicate that she has failed to heed the dietary counsel she has been provided. A review of her purchase history show that Defendant regularly consumes high fat, high sugar, and high calorie foods.

The Defendant also alludes to her conditions of confinement limiting her ability to socially distance and otherwise restricting her liberty in ways that "make it impossible to self-care." Other than this blanket statement, Defendant does not articulate exactly how her ability to render self-care is affected. The Court acknowledges that in-facility movement has been understandably curtailed by the BOP due to COVID-19 and that social distancing is difficult in the institutional context. The Government's brief cites ongoing efforts by the Bureau of Prisons to take serious and substantial steps to reduce the spread of COVID-19 within its facilities. *See* Federal Bureau of Prisons, COVID-19 Action Plan: Phase Seven (posted on May 20, 2020), https://www.bop.gov/resources/news/20200520_covid-19_phase_seven.jsp last visited February 24, 2021); see also, BOP COVID-19 Modified Operations Plan, https://www.bop.gov/coronavirus/covid19_status.jsp (updated November 25, 2020). But even prior to these restrictions being in place, the Defendant showed little resolve to engage in the type

of lifestyle modifications or compliance necessary to aid her own health. The Defendant has not suggested, or in any way indicated, that she intends to do what is necessary to comply with the medical providers' advice inside the BOP or out.

The Defendant has additionally expressed concern about the ability of the BOP to contain the COVID-19 virus. As of the date of this Opinion and Order, FMC Lexington, has eight positive inmate and 4 positive staff members. A total of nine inmate deaths have been recorded, and a combined 813 inmates and staff have recovered. While certainly not ideal, these numbers support the conclusion that the BOP has managed the risk in an acceptable manner especially given the limitations of its facilities. *See United States v. Raia,* 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."). Further, the Defendant has contracted the COVID-19 virus and recovered which demonstrates the ability of the BOP to appropriately care for those infected with the virus.

Finally, setting aside the above discourse as to whether a compassionate release petitioner has at least some marginal obligation to maintain their own health and follow the advice of medical professionals while incarcerated, see *United States v. Tranter*, No. 1:17-CR-22-HAB, 2020 WL 3841268, at *4 (N.D. Ind. July 8, 2020)(denying compassionate release for a defendant's poor life choices as it allows "an avenue for defendants to create grounds on their own" that serves to "cheapen the concept of extraordinary and compelling circumstances."), in this case, even if the Court was inclined to find that the Defendant's health issues constituted an "extraordinary and compelling" reason justifying release, the Court concludes that her release is inappropriate in light of the factors set forth in § 3553(a).

Neither the Government nor the Court contend that the Defendant is a physical or violent threat to the community. However, the Defendant has a lengthy history of various financial fraud offenses including passing bad checks, theft, misuse of credit cards, and forgery. Additionally, the Defendant has a prior Federal bank embezzlement conviction (Docket No. 3:95-CR-771, Northern District of Ohio) in which she stole funds from her employer, Exchange Bank. While on supervised release for that offense, the Defendant committed additional state offenses for which she was sentenced to 56 months imprisonment to be served consecutive to her Federal sentence on the supervised release violation. Not to be deterred, the Defendant was then charged in the instant 15-count offense which included an aggravated identity theft count to which she pled guilty. In light of all this, the Court imposed a sentence taking into account the nature and circumstances of the offenses, the severity of her conduct, and the fact that prior sentences, including a prior Federal sentence and a significant state sentence, did not curb the Defendant's propensity to commit financial crimes. Indeed, her sentence of 51 months was imposed to deter future conduct and to promote respect for the law. A reduction of the sentence as Defendant requests would greatly undermine these purposes of sentencing, especially in light of the prior opportunities the Defendant has had to conform her conduct with the law.

In sum, because this Court does not find extraordinary and compelling circumstances exist for the Defendant's release and a reduction of sentence is inconsistent with the § 3553(a) factors, Defendant does not meet the criteria for compassionate release.

## **CONCLUSION**

Based on the foregoing, the Defendant's Motion (ECF No. 83) is DENIED.

SO ORDERED on March 1, 2021.

s/ *Holly A. Brady*

JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT